UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JAMIE R. SELTZ )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MICHAEL J. ASTRUE, )<br>Commissioner of Social Security, [1] )<br>)<br>Defendant. )<br>_____) | CASE NO. C06-342-MJB<br><br>MEMORANDUM OPINION |

Plaintiff Jamie Seltz appeals to the U.S. District Court from a final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. The parties having consented to the undersigned judge for final judgment and the Court having considered the pleading of the parties, for the reasons set forth below, AFFIRMS the decision of the Commissioner.

I. PROCEDURAL HISTORY

Plaintiff protectively filed an application for SSI and DIB in October 22, 2002. Tr. 69-71. She alleges disability since August 21, 2001, identifying her impairments as: myasthenia gravis, chronic obstructive pulmonary disease ("COPD"), hypertension, hepatitis C, left knee

---

[1] Defendant substituted pursuant to F.R.C.P. 25(d)(1) and 42 U.S.C. § 405(g). Michael J. Astrue became Commissioner of Social Security on February 12, 2007.

Memorandum Opinion
Page - 1

1  meniscus tear, restless leg syndrome, depression, urinary incontinence, and possible attention

2  deficit hyperactivity disorder ("ADHD"). *Id*. The Social Security Administration denied

3  Plaintiff's application initially and upon reconsideration. Tr. 40-41, 47-49. Plaintiff's first full

4  hearing was held before Administrative Law Judge ("ALJ") Mary Gallagher Dilley, on May 17,

5  2004. Tr. 355-57. The Plaintiff testified along with and Eric Bensch, a vocational expert

6  ("VE"). Tr. 357-87. After the hearing, the ALJ ordered a consultative examination. Tr. 386-

7  87. A further hearing was held on January 5, 2005 following the receipt of additional medical

8  evidence and testimony from Steve Duchesne, a vocational expert. Tr. 388-430. The ALJ

9  issued an unfavorable decision on May 26, 2005, finding that Plaintiff was not disabled. Tr. 20-

10 38. On January 11, 2006, the Appeals Council denied Plaintiff's request for review, making the

11 ALJ's decision the final decision of the Commissioner. Tr. 7-10. Plaintiff timely filed her

12 appeal with this Court.

## II. SUMMARY OF RECORD EVIDENCE

Plaintiff was 49 years old at the onset of the alleged disability in 2001. Tr. 22. She has an eight grade education (Tr. 90), and reported working as a convenience store cashier and fire watch worker, clean-up worker, and retail store manager. Tr. 103-08. Other evidence relevant to Plaintiff's claims is incorporated into the discussion below.

## III. THE ALJ'S DECISION

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the time relevant to this matter. Tr. 37. At step two, the ALJ identified Plaintiff's severe impairments as COPD, post traumatic stress disorder ("PTSD"), and left knee meniscus tear. *Id*. At step three, the ALJ determined that none of Plaintiff's impairments meet or equal the requirements of a listed impairment. *Id*. The ALJ found that Plaintiff has retained the residual functional capacity ("RFC") to perform light work, she could carry 20 pounds occasionally, 10

pounds frequently, stand and/or walk for a total of 6 hours in an 8-hour workday, sit for a total of 6 hours in an 8-hour workday with normal breaks, occasionally kneel, crawl, and climb ramps and stairs, with no overhead reaching, she was limited to occasional contact with the public, and must avoid concentrated exposure to fumes, odors, dust, and gasses. *Id.* At step four, the ALJ found that Plaintiff was unable to perform her past relevant work. *Id.* However, at step five, the ALJ found that based on Plaintiff's RFC, age, "limited" education, and work experience, a significant number of jobs existed in the national economy which she could perform, including production assembler and parking lot cashier. *Id.* Accordingly, the ALJ concluded that Plaintiff is not under a disability as defined in the Social Security Act. *Id.*

## IV. STANDARD OF REVIEW

The court may set aside the Commissioner's denial of social security disability benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). Substantial evidence is defined as more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive. 42 U.S.C. 405(g); *Harmon v. Finch*, 406 F.2d 1228 (9th Cir. 1972, *cert. denied* 409 U.S. 1063, *reh'g. denied*, 410 U.S. 916 (1973)). Where the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion which must be upheld. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).

## V. DISCUSSION

The issue here is whether the decision of the Commissioner is supported by substantial evidence and free of legal error. Plaintiff argues that the ALJ failed to properly consider

several additional impairments in her RFC determination, including:  1) myasthenia gravis, 2) carpal tunnel syndrome ("CTS"),  3) restless leg syndrome ("RLS"), 4) stress incontinence, 5) attention deficit hyperactivity disorder (ADHD),  6) substance abuse, and 7) hepatitis C. Dkt #14 at 4-9.  Plaintiff also argues that the ALJ improperly evaluated the medical evidence, her credibility, and improperly determined Plaintiff's RFC. *Id*. at 9-13.  Defendant responds that the ALJ properly determined the severity of Plaintiff's impairments at step two and the ALJ's evaluation of the medical evidence is supported by substantial evidence.

A.   *Non-severe Impairments* [2]

The Commissioner argues that the ALJ provided an extensive and detailed summary and analysis of the medical evidence of record.  Dkt. #16 at 5, 15.  The Commissioner further argues that Plaintiff failed to cite evidence of the record to support her assertions that the alleged severe impairments, listed above, significantly limit her physical or mental ability to do basic work activities.  Dkt. #16 at 5.

Whether an impairment is severe requires "a de minimis screening device to dispose of groundless claims...An impairment or combination of impairments can be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individuals (sic) ability to work." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).

*1. Myasthenia Gravis* [3]

Plaintiff argues that the ALJ erred in failing to properly consider her myasthenia gravis impairment.  Dkt. #14 at 5, 6.  Specifically, she argues that the ALJ's consulting neurologist, Robert H. Price, M.D., could have, but did not confirm myasthenia gravis by performing one of

---

[2] The discussion is ordered by this Court's view of the significance of medical support for the alleged conditions.

[3] Definition found at Plaintiff's brief, Dkt. #14 at 5 fn. 4.  She was diagnosed by Dr. Arthus Ginsburg and had a thymectomy approximately 22 years ago.  Tr. 207, 290-91.

several diagnostic tests, and that sufficient consideration was not given to her treating neurologist, Rodney J. Johnson, M.D., who had been prescribing medication for myasthenia symptoms. *Id.*

The ALJ noted that Plaintiff testified that her myasthenia gravis was stable with medication, and as a consequence, she had not seen Dr. Johnson since 2003. Tr. 23-25, 30, 33. Likewise, Dr. Price's consultative report indicated a normal neurological examination, including normal gait, strength, and stride. Tr. 290-298. Plaintiff argues that the ALJ did not properly consider the opinion of Dr. Johnson, who assessed that Plaintiff could not realistically work. Dkt. #14 at 9-10. However, the ALJ noted that Dr. Johnson's examination findings and treatment notes did not support his conclusions regarding Plaintiff's disability, namely that Plaintiff could not realistically work and earn a living. Tr. 33.

Specifically, the ALJ cited Dr. Johnson's own notes that he found only mild fatigability, otherwise normal direct strength testing, and that subsequent examinations were unremarkable, including normal coordination, gait, and motor strength.
Tr. 33. His notes read:

> [N]o weakness on repetitive grip or other strength testing. Myasthenia gravis, with complaints of fatigue, no evidence on today's examination (Tr. 280); myasthenia gravis with relatively stable course, increased stress, and symptoms of carpal tunnel (Tr. 279); myasthenia gravis stable, easily fatigued (Tr. 209); and history of myasthenia gravis, but no symptoms for multiple years (Tr. 205).

There is a contradiction between these treatment records and his conclusion:

> We have reviewed her (Plaintiff's) options for work and given her variable weakness and endurance symptoms, the lack of a real job that would fit someone with variable ability to work, the patient could not realistically work and earn a living. Tr. 204.

Nothing in Dr. Johnson's current treatment records of the plaintiff would support this conclusion. Accordingly, the ALJ discrediting Johnson's opinion is not error.

Additionally, Plaintiff argues that the ALJ did not properly consider the opinion of Sabrina Yon, M.D., who assessed that Plaintiff could only perform sedentary work. Dkt. #14 at

10. Dr. Yon also assessed that Plaintiff was limited to sedentary work, but estimated a release for work in sixteen weeks. Tr. 260. In answering whether treatment would likely restore Plaintiff's ability to work, she stated that:

> (U)nknown–patient's primary condition–(myasthenia gravis) is outside my field of expertise. (P)atient's inability to work is based mainly on fatigue and neurological symptoms of myasthenia gravis - some contribution by COPD. Notes from Dr. Rodney Johnson, neurologist, would have to be reviewed. You would need to get his opinion. His notes are not available at our office.

*Id.* Dr. Yon's deferral to Dr. Johnson, therefore is not an opinion upon which the ALJ can rely. Moreover, she also admits that this is not her area of expertise.

A third report, Dr. John M. Zimmerman's records of August 2002, show that Plaintiff suffered from "easy fatigability of major muscle groups." He assessed her ability to work in sedentary employment for the next 12 to 24 months and be released to work (full-time) by August 2004. Tr. 203-4. The ALJ discounted this opinion, in part, because it was made for the purpose of state assistance and therefore used a different standard. Tr. 32. Further, the ALJ appears to have accorded it little weight because it was based in part on Plaintiff's subjective complaints. The ALJ found Plaintiff's complaints less credible because of her failure to take her medications for blood pressure and myasthenia gravis regularly or use her inhaler regularly. *Id.* It is true as the Commissioner argues that the ALJ is solely responsible for resolving conflicts in the evidence, citing *Sample v Schwiker*, 694 F.2d 639, 642 (9th Cir.1982). Our courts have consistently held that "questions of credibility and resolution of conflicts in the testimony are functions solely of the Secretary." *Allen v. Heckler*, 749 F.2d 577, 580 n.1. (9th Cir. 1985). Accordingly, the ALJ's rejection of these medical opinions is supportable on the record evidence.

    *2. Carpal Tunnel Syndrome* (CTS)

Plaintiff argues that the ALJ erred in failing to properly consider her carpal tunnel syndrome (CTS) and that the ALJ should have developed the record. Dkt. #14 at 7. The ALJ

noted that no objective evidence established a medically determinable impairment, that there was no diagnosis of CTS, and that Plaintiff previously denied neuropathy of her hands or arms. Tr. 26, 27. The Court agrees that the treatment records do not support Plaintiff's alleged CTS impairment or the severity of that impairment. The record shows no diagnosis of CTS.[4] Dr. Johnson merely noted that Plaintiff was experiencing CTS symptoms and recommended a follow-up evaluation. Tr. 279. Objective testing during neurological evaluations produced unremarkable findings and during other neurological evaluations, Plaintiff never mentioned her CTS impairment. Tr. 290-98. Consequently, this Court finds that the ALJ adequately supported her assessment of Plaintiff's CTS impairment as non-severe.

*3. Restless Leg Syndrome* ("RLS")

Plaintiff alleges that the ALJ made no finding concerning the severity of Plaintiff's RLS. Dkt. #14 at 6. The ALJ concluded that evidence in the record showed that RLS was not a significant ongoing problem; he noted that treatment records do not support ongoing reports of problems with RLS and that Plaintiff never complained to Dr. Price at her most recent consultative exam. Tr. 31. In February 2003, Dr. Johnson noted that Plaintiff "appear(ed)" to have RLS and prescribed an appropriate medication. Tr. 281. There is no expressed diagnosis of RLS in the medical record. Further, during other neurological evaluations, Plaintiff never sought to address her RLS impairment; nor is there evidence that Plaintiff continued with the prescribed RLS medications. Tr. 290-98. Consequently, there is substantial evidence to support the ALJ's finding that Plaintiff's restless leg syndrome was not a severe impairment.

*4. Stress Incontinence*

Plaintiff argues that the ALJ erred by failing to properly consider her incontinence as a

---

[4] On July 8, 2003, in paperwork submitted to the Social Security Administration, Dr. Johnson noted that Plaintiff had CTS. Tr. 167. However, this Court cannot find support from medical evidence of the Dr. Johnson's own treatment notes to support such a finding.

Memorandum Opinion
Page - 7

severe impairment since it occurred daily, especially while walking fast, ascending or descending stairs, or coughing. The Plaintiff urged that Dr. Saro Lee had noted stress incontinence among Plaintiff's symptoms in January, 2003. Dkt. #14 at 7. But other than a notation, there is no source for the information. The Court is left to assume the complaint comes from the Plaintiff, yet it only appears once in Plaintiff's longitudinal medical history and is without any other support in the record.

The ALJ concluded that Plaintiff may have some difficulties with bladder control at times, but that the record did not support significant ongoing bladder control problems, citing little objective evidence of the problem and Plaintiff failure to report the problem during her most recent consultative examination in July 2004. Tr. 32. The Court agrees with the ALJ that Plaintiff's complaints of stress incontinence are supported in the record, thus they do not meet Plaintiff's burden of showing that this condition had more than a minimal effect on her ability to work. *See*, Tr. 172-73.

*5. Attention Deficit Hyperactivity Disorder (ADHD)*

Plaintiff argues that the ALJ erred in failing to properly consider her ADHD. Dkt. #14 at 7. The Commissioner responds that Plaintiff cited no evidence that shows ADHD caused more than a minimal effect on her ability to perform basic work activities. Dkt. #16 . The ALJ noted a single mention of "possible ADHD" but no definitive diagnosis, and concluded that there was insufficient objective medical evidence to establish an ADHD related impairment. Tr. 25, 27. The only evidence of an ADHD impairment comes from Roger I. Meinz, Ph.D, who stated that "she (Plaintiff) comes across as having ADHD, but I couldn't be sure without further testing." Tr. 286. Without a definitive diagnosis of ADHD in the medical record, nor evidence that the alleged ADHD impairment had an effect on Plaintiff's ability to work, the ALJ's finding is supported by substantial evidence.

*6. Substance Abuse*

Plaintiff argues that the ALJ should have determined whether she was disabled because of drug and alcohol use and/or would have remained so if she were to cease using drugs. Dkt. #14 at 8. Commissioner responds that Plaintiff does not proffer, nor does the record evidence show any substance abuse diagnosis during the relevant period. Dkt. #16 at 7. Further, the Commissioner argues that since the ALJ found Plaintiff's substance abuse to be a non-severe impairment and Plaintiff not disabled, a drug and alcohol analysis ("DAA") was not warranted. *Id*. at 7-8; *citing* 20 C.F.R. §§ 404.1535(a), 416.935(a)(If we find that you are disabled and have medical evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability); *See also* 20 C.F.R. §§ 404.1535(b), 416.935(b)(If we determine that your remaining limitations would be disabling, we will find that your drug addiction or alcoholism is a contributing factor material to the determination of disability). *Id.*

In May 2003, Plaintiff reported using both crack cocaine and heroine within the past week. Tr. 267. However this contravenes her statement that she received treatment for cocaine use in 1992 and puts her credibility at issue. Tr. 291. The medical records do not corroborate any addictive use during the insured period. Accordingly, this Court finds that the ALJ's finding that Plaintiff's drug use was not a severe condition is supported by substantial evidence and thus no DAA analysis was warranted.

*7. Hepatitis C*

Without factual support in the medical record, the Plaintiff argues that the ALJ erred in failing to properly consider her hepatitis C impairment. Dkt #14 at 5. Defendant responds the medical evidence shows that hepatitis C caused no limitation. Dkt. #16 at 5. The ALJ noted that Plaintiff received no hepatitis C treatment; expressed no jaundice; and had normal liver function test results. Tr. 31, 171, 206, 253-54. Plaintiff reported that she was unable to pay for related

treatment due to a lapse in her insurance. Tr. 172. Yet, where there is no evidence demonstrating that hepatitis C limited her liver functioning and thereby her ability to work, there is substantial evidence to support the ALJ's finding that condition as non-severe.

B.     *Rejected Physicians' Opinions*

Plaintiff argues that the ALJ improperly rejected several medical opinions of Drs. Johnson, Yon, Meinz and Zimmerman. Dkt. #14 at 9-11. The Commissioner responds that the ALJ's review of the evidence was thorough and well reasoned giving specific and legitimate reasons for rejecting controverted medical opinion. Dkt. #16 at 9.

The only remaining medical opinion not addressed in this memorandum is that of Dr. Meinz. Plaintiff argues that the ALJ did not properly consider the opinion of Dr. Meinz, who assessed that Plaintiff was precluded from interacting with the general public. Dkt. #14 at 10. Dr. Meinz diagnosed Plaintiff with PTSD, chronic, mild to moderate and possible ADHD. Tr. 286. "[I]n the absence of the physical problems, she (Plaintiff) probably could return to work with her current level of PTSD, so long as she does not work with the general public and she could work during the daytime." *Id.* Further, Dr. Meinz stated that:

> Given her physical problems, the greater likelihood is that Ms. Seltz couldn't work at physically demanding jobs. The question remains, then, whether she could perform sedentary work involving primarily paperwork. Further cognitive testing would be likely required to rule out her ability to adequately attend to such work. Ms. Seltz has never sought treatment for the PTSD. With treatment and perhaps medication she *might* well find many of the symptoms to remit. The prognosis for recovery would be good with treatment, it would seem.

*Id.*

These statements do not contravene the ALJ's conclusion that the PTSD was a non-severe limitation. While the ALJ commented that Dr. Meinz evaluated Plaintiff as having a marked limitation in Plaintiff's ability to interact with the public, the ALJ concluded this was not preclusive of working with the public entirely. Tr. 34. The ALJ looked at Plaintiff's activities of daily living showing some difficulty interacting with the public, but that she was able to grocery

1  shop and attend Narcotics Anonymous (NA) and Alcoholics Anonymous (AA) meetings which
2  does involve some interaction with the public. Tr. 34. This analysis appears specific and not
3  unreasonable, illegitimate or of legal error.

C.  *Plaintiff's Credibility*

Plaintiff argues that the ALJ improperly rejected her testimony because she provided inconsistent dates related to her sobriety. Dkt. #14 at 12. She further argues that prevalent inconsistencies in the record are due to her mental impairment and that the significance of her testimony should be credited because of these inaccuracies and cites *Benecke v. Barnhart*, 379 F.3d 587, 94 (9th Cir. 2004). *Id.* The Commissioner responds that the ALJ properly determined that Plaintiff's allegations were not entirely credible and provided sufficiently specific reasons to permit the court to conclude that the ALJ did not arbitrarily credit the Plaintiff's testimony. Specifically the ALJ reasoned that there were inconsistencies in Plaintiff's reported use of heroine and cocaine; and further, that the alleged severity of Plaintiff's impairments was not supported by objective medical evidence in that Plaintiff's condition improved significantly when she was compliant with medical treatment. Lastly, the Commissioner argues that Plaintiff's activities of daily living, including grocery shopping and weekly attendance at AA/NA meetings made her testimony less credible. Tr. 29- 32.

Credibility determinations are the province of the ALJ. *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989). The Court noted earlier that it was reasonable for the ALJ to conclude that Plaintiff was not forthcoming when she stated in May 2003, that she had used both crack cocaine and heroine within the past week (Tr. 267), but in July 2004, stated that she had been sober since receiving treatment for cocaine use in 1992. Tr. 291.

The Court finds that the ALJ's credibility determination has strong support in the record given that the inconsistencies between the alleged severity of Plaintiff's impairments and the

Memorandum Opinion
Page - 11

1  treatment records, unremarkable objective test results, and evidence that Plaintiff's condition

2  improved significantly when she was compliant with medical treatment. As the Commissioner

3  points out, "One strong indication of the credibility of an individual's statements is their

4  consistency, both internally and with other information in the case record." SSR 96-7p.

5  Accordingly, there is substantial evidence in the record to support the ALJ's finding that the

6  Plaintiff was not totally credible.

D. *The ALJ's RFC Determination*

8  Plaintiff argues that the ALJ's RFC determination does not comport with medical

9  evidence found in Drs. Yon, Zimmerman and Meinz' reports when considered along

10  with the Plaintiff's testimony. Dkt. #14 at 12. The Commissioner responds that the ALJ

11  properly determined Plaintiff's RFC in light of the medical evidence and credible portions of

12  Plaintiff's testimony. Further, the Commissioner argues that the ALJ properly discredited the

13  more severe limitations Plaintiff alleged, but that these conditions were unsupported by the

14  medical evidence. Dkt. # 16 at 17, 18.

15  Under the Social Security Act regulations, an ALJ must assess a plaintiff's RFC as the

16  most she can do given her limitations and impairments. SSR 96-8p. It is the ALJ's responsibility

17  to determine Plaintiff's RFC and to explain it in light of all relevant evidence. *Id.* 20 C.F.R. §§

18  404.1546, 416.946. The Court has already concluded that the opinions of Drs. Yon, Zimmerman

19  and Meinz were properly assessed by the ALJ. Other than reexamining that discussion, the

20  Plaintiff offers little else in addition to support their argument of ALJ error at step four. In fact,

21  several pages of the ALJ's opinion, beginning at page 32, are devoted to a discussion of

22  Plaintiff's RFC. In it the ALJ concurred with Dr. Prices' neurological and physical examinations

23  of Plaintiff and considered the non-exertional mental limitations posed by Plaintiff's PTSD.

24  Consequently after the testimony of a vocational expert, the ALJ concluded that there were jobs

Memorandum Opinion
Page - 12

in the national economy that would not be restricted by Plaintiff's specific PTSD limitation. Tr. 36. This was not erroneous given the record evidence.

## VI.  CONCLUSION

Based on the forgoing, the Court finds that the Commissioner's decision denying Plaintiff's applications for Disability Insurance Benefits and Supplemental Security Income benefits is supported by substantial evidence and is free of legal error.  Therefore, the Court AFFIRMS the decision of the Commissioner.

DATED this 19th day of June, 2007.

_____
MONICA J. BENTON
United States Magistrate Judge